ace

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHAEL C. SCOTT,                    )
                                     )
                    Plaintiff,       )
                                     )
        vs.                          )        Case No. 07-2177-JAR
                                     )
KIRK J. BLACK AND                    )
MEREDITH CORPORATION,                )
                                     )
                    Defendants.      )
_____  )

### MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND

The Court now considers plaintiff's Motion for Remand.  (Doc. 13.)  Plaintiff filed this action in the District Court of Johnson County, Kansas, and defendants removed it to federal court, asserting diversity jurisdiction.  Plaintiff moves to remand this case back to state court, arguing that there is not complete diversity of parties, for plaintiff Michael C. Scott is a citizen of the State of Kansas and defendant Kirk J. Black is also a citizen of the State of Kansas.  But defendants contend that Black was fraudulently joined as a defendant, that the remaining parties to this suit have diverse citizenship and removal is therefore appropriate.  As more fully explained below, the Court grants plaintiff's motion to remand.

## I.      Background

On September 2, 2004, plaintiff into entered into an Employment Agreement with Meredith Corporation.  In December 2006, Meredith Corporation terminated plaintiff's employment.  Plaintiff then brought this action in state court against Meredith Corporation and Black, the Vice President and General Manager of Meredith Corporation's office in Johnson County, Kansas, alleging that Meredith breached the Employment Agreement by failing to

provide written notice of his termination.  In his Complaint, plaintiff brings two claims: (1) breach of contract against Meredith Corporation, and (2) violation of the Kansas Wage Payment Act ("KWPA") against Meredith Corporation and Black.

Under the KWPA, if an employer terminates an employee and willfully fails to pay the employee earned wages, the employer

> shall be liable to the employee for the wages due and also shall be liable to the employee for a penalty in the fixed amount of 1% of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure continues after the eighth day after the day upon which payment is required or in an amount equal to 100% of the unpaid wages, whichever is less.[1]

The KWPA defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions."[2]  As the basis for his KWPA claim, plaintiff relies on paragraph 10 of the Employment Agreement ("paragraph 10" or "damages provision"). Paragraph 10 states that if Meredith Corporation improperly terminates plaintiff's employment, the liquidated amount of damages that plaintiff may recover shall be "the amount of pay that would have been payable by [Meredith Corporation] to [plaintiff] for the remaining term of this agreement."[3]  Plaintiff contends that the "amount of pay that would have been payable" constitutes "wages" under the KWPA, and that Meredith Corporation and Black are liable to plaintiff under the KWPA for willfully failing to pay plaintiff the amount owed under the

---

[1] K.S.A. § 44-315(b).

[2] *Id.* § 44-313(c).

[3] (Doc. 17, Ex. A at 4–5.)

2

liquidated damages provision in paragraph 10.[4]

On April 27, 2007, defendants removed this action to federal court, contending that this Court has diversity jurisdiction.  Although plaintiff and Black are both citizens of Kansas, defendants argue that Black has been fraudulently joined to this action.  Defendants maintain that plaintiff has no possibility of establishing a cause of action against Black under the KWPA because the liquidated damages provided for in paragraph 10 are not "wages" under the statute as a matter of law.  Thus, defendants contend that Black, as a fraudulently joined party, should be ignored for the purposes of determining diversity jurisdiction.

## II.    Applicable Law

Only state court actions that could have originally been filed in federal court are removable.[5]  The court is required to remand "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[6]  As the party invoking the federal court's jurisdiction, defendants carry the burden of demonstrating that the requirements for exercising jurisdiction are present.[7]  Because federal courts are courts of limited jurisdiction, the law imposes a presumption against federal jurisdiction,[8] and requires a court to deny its jurisdiction

---

[4]Plaintiff asserts that Black is personally liable for a violation of the KWPA because "[a]ny officer, manager, major shareholder or other person who has charge of the affairs of an employer, and who knowingly permits the employer to engage in violations of [the KWPA] may be deemed the employer for purposes of this act." K.S.A. § 44-323(b).  Defendants do not refute plaintiff's allegation that Black may be held personally liable under the KWPA.

[5]28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

[6]*Id.* § 1447(c).

[7]*See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) (citation omitted), *aff'd*, 126 S. Ct. 704 (2005).

[8]*Frederick & Warinner v. Lundgren*, 962 F. Supp. 1580, 1582 (D. Kan. 1997) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

3

in all cases where such jurisdiction does not affirmatively appear in the record.[9]  "Doubtful cases must be resolved in favor of remand."[10]  Subject matter jurisdiction based on diversity requires that no plaintiff be a resident of the same state as any defendant and that the amount in controversy exceed $75,000.[11]  Removal jurisdiction over diversity cases is more limited than jurisdiction over diversity cases originally brought in federal court because removal based on diversity is available only if none of the defendants is a citizen of the state in which the action is brought.[12]

It has long been held that the right of removal cannot be defeated by "a fraudulent joinder of a resident defendant having no real connection with the controversy."[13]  Fraudulent joinder is a term of art; it does not reflect on the integrity of the plaintiff or counsel, but exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant.[14]  The removing defendant's burden of proving fraudulent joinder is not unlike the burden of proving any claim of fraud.[15]  "[U]pon specific allegations of fraudulent joinder, the court may pierce the pleadings, consider the entire record, and determine

---

[9]*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

[10]*Thurkill v. The Menninger Clinic, Inc.*, 72 F. Supp. 2d 1232, 1234 (D. Kan. 1999) (citing *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), *cert. denied*, 516 U.S. 863 (1995) (further citations omitted)).

[11]28 U.S.C. § 1332(a).

[12]*Id.* § 1441(b).

[13]*Cooper v. Zimmer Holdings, Inc.*, 320 F. Supp. 2d 1154, 1156–57 (D. Kan. 2004) (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).

[14]*Id.* (citation omitted).

[15]*McLeod v. Cities Serv. Gas Co.*, 233 F.2d 242, 246 (10th Cir. 1956).

the basis of joinder by any means available."[16]  "In so doing, the court must decide whether there

is a reasonable basis to believe the plaintiff might succeed in at least one claim against the

non-diverse defendant."[17]  "A 'reasonable basis' means just that: the claim need not be a

sure-thing, but it must have a basis in the alleged facts and the applicable law."[18]

     The Tenth Circuit addressed fraudulent joinder claims in its unpublished opinion,

*Montano v. Allstate Indemnity*,[19] stating:

> "To prove their allegation of fraudulent joinder [the removing
> parties] must demonstrate that there is no possibility that [plaintiff]
> would be able to establish a cause of action against [the joined
> party] in state court.  In evaluating fraudulent joinder claims, we
> must initially resolve all disputed questions of fact and all
> ambiguities in the controlling law in favor of the non-removing
> party.  We are then to determine whether that party has any
> possibility of recovery against the party whose joinder is
> questioned."  This standard is more exacting than that for
> dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter
> entails the kind of merits determination that, absent fraudulent
> joinder, should be left to the state court where the action was
> commenced.  Finally, as the reference to "a cause of action" in the
> quoted passage reflects remand is required if any one of the claims
> against the non-diverse defendant . . . is possibly viable. [20]

Although *Montano* is unpublished, other courts in this district have recently relied upon its

reasoning as persuasive.[21]  Because the case has persuasive value and its rationale assists this

---

[16]*City of Neodesha, Kan. v. BP Corp. N. Am. Inc.*, 355 F. Supp. 2d 1182, 1185 (D. Kan. 2005) (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted)).

[17]*Nerad v. AstraZeneca Pharm.*, 203 Fed. App'x 911, 913 (10th Cir. 2006) (citing *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393 (5th Cir. 2000)).

[18]*Id.*

[19]211 F.3d 1278 (table), 2000 WL 525592 (10th Cir. Apr. 14, 2000).

[20]*Id.* at *1–2 (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000)) (citations omitted).

[21]*City of Neodesha*, 355 F. Supp. 2d at 1186–87; *Cooper v. Zimmer Holdings, Inc.*, 320 F. Supp. 2d 1154, 1157 (D. Kan. 2004); *Crow v. State Indus.*, No. 01-2555-GTV, 2003 WL 1053945, at *3 (D. Kan. Feb. 27, 2003).

5

Court in deciding the instant pending motion, the Court shall also rely upon *Montano*.[22]

Thus, the Court will determine whether plaintiff has any possibility of recovery against Black, viewing any disputed questions of fact and all ambiguities in the controlling law in favor of plaintiff, as the non-removing party.[23]  "To defeat plaintiffs' motion to remand it is incumbent upon defendants to show that there is no possibility that plaintiffs would be able to establish a cause of action against [the defendant] in state court."[24]  To make this determination, the court looks to the facts pled in the Petition and the law of the state of Kansas.[25]  Any ambiguities in the controlling state law are resolved in favor of the plaintiff.[26]

## III.   Discussion

Plaintiff brings a claim against Black under the KWPA alleging that Black willfully failed to pay plaintiff the "amount of pay that would have been payable" under the liquidated damages provision in paragraph 10.  Defendants respond that the "amount of pay that would have been payable" does not constitute "wages" under the KWPA, and therefore plaintiff has no possibility of establishing a claim against Black under the KWPA.  To support their argument, defendants rely on *Fitzgerald v. City of Ottawa*.[27]  In that case, a former police officer entered into a Separation Agreement and Release with the City in which the City agreed to provide

---

[22]*See* 10th Cir. R. 36.3(B)(1)–(2) (explaining that unpublished decisions may be cited if they have persuasive value with respect to a material issue not addressed in a published opinion and it would assist the court in its disposition).

[23]The parties do not dispute the jurisdictional facts, such as citizenship of the parties, set forth in the Petition.

[24]*Cooper*, 320 F. Supp. 2d at 1157.

[25]*See City of Neodesha*, 355 F. Supp. 2d at 1187.

[26]*Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995).

[27]975 F. Supp. 1402 (D. Kan. 1997).

severance pay in exchange for plaintiff's resignation and release of all claims against the City.[28]

The court held that the payment due under the Separation Agreement was not "wages" under the

KWPA because the compensation due under the terms of the Separation Agreement "was

consideration for plaintiff's resignation and release of claims, not for services rendered."[29]  The

court explained that "[t]he Kansas Wage [Payment] Act provides a mechanism for penalizing

employers who withhold payment of *earned* wages; it does not enhance contractual remedies for

those who enter into agreements with parties who happen to be their employers."[30]  Defendants

argue the damages claimed by plaintiff in this case, like the compensation sought by plaintiff in

*Fitzgerald*, do not constitute "wages" under the KWPA because they are not remuneration for

any services rendered.

Plaintiff argues that *Fitzgerald* is inapplicable to this case because the payment at issue in

*Fitzgerald* was consideration for plaintiff's resignation and release of claims, whereas the

payment at issue in this case is provided for in an employment agreement entered into by

plaintiff and Meredith Corporation.  Plaintiff instead compares the payment that he seeks under

paragraph 10 to severance wages, which are "generally considered wages when provided for by

collective bargaining agreements."[31]  In *Commodore v. Armour & Co.*, the Kansas Supreme

Court acknowledged that the purpose of the collective bargaining agreement "was to provide

incentive for continuous employment by enhancing employee benefits"  and "to provide security

---

[28]*Id.* at 1404.

[29]*Id.* at 1407.

[30]*Id.* (emphasis in original).

[31]*Commodore v. Armour & Co.*, 441 P.2d 815, 821 (Kan. 1968).

7

for an employee on his retirement in good standing."[32]   As such, the court held that the separation pay provided under the terms of the collective bargaining agreement constituted wages because

> [u]nder the terms of the agreement in question, plaintiff's continuing, in a satisfactory manner, his services in Armour's employment was an important part of the consideration for separation pay . . . Separation pay constituted additional wages for continuing in employment until termination, under conditions in compliance with the requirements of the agreement.[33]

While defendants argue that the decision in *Commodore* is inapplicable because it did not involve a claim under the KWPA, other courts have applied *Commodore*'s holding when analyzing KWPA claims.[34]   Indeed, the court in *Fitzgerald* distinguished the payment at issue under the Severance Agreement in that case with the separation pay at issue in *Commodore* by stating that "the separation pay was provided in a collective bargaining agreement that governed the plaintiff's employment."[35]

Plaintiff also relies on *Eckert v. American Business Information, Inc.*[36]  In that case, an employee entered into an employment agreement that was modified by a letter that provided severance pay to the employee if the employer exercised its option to terminate the employee on 30 days notice for failing to meet performance standards.[37]  The court in *Eckert* held that the severance pay under the employment agreement was "wages" under the KWPA because the

---

[32]*Id.* at 819.

[33]*Id.* at 822.

[34]*See, e.g.*, *Sweet v. Stormont Vail Reg. Med. Ctr.*, 647 P.2d 1274, 1280 (Kan. 1982).

[35]*Fitzgerald v. City of Ottawa*, 975 F. Supp. 1402, 1407 (D. Kan. 1997).

[36]873 F. Supp. 507 (D. Kan. 1994).

[37]*Id.* at 508.

severance pay was "'agreed compensation for services' that [plaintiff] bargained for with [defendant]."[38]  Defendants argue that the payment at issue in this case is unlike the separation pay in *Eckert* and *Commodore* because the separation pay in those cases was contingent upon the plaintiff's conduct in remaining employed for an amount of time or delivering a certain quality of performance, whereas the damages provision in this case is not contingent upon the plaintiff's conduct, but rather it is conditioned upon Meredith Corporation's breach of the Employment Agreement.  But plaintiff counters that he entered into the Employment Agreement with Meredith Corporation on the condition that he would provide services to Meredith Corporation for three years unless the Employment Agreement was properly terminated; otherwise, Meredith Corporation must pay plaintiff under the damages provision of paragraph 10 for failing to properly terminate the Employment Agreement.

  As shown above, the cases that the parties rely on to support their arguments are not directly on point.  Indeed, the parties have cited no cases that address whether payment under a damages provision of an employment agreement constitutes "wages" under the KWPA.[39]  Further, the Court's own research has not revealed any cases that are directly on point.  Thus, whether plaintiff can recover the payment contemplated in paragraph 10 of the Employment Agreement under the KWPA involves an undeveloped legal issue.  While allegations of joinder allow the court to "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available," "[t]his does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of

---

[38]*Id.* at 509 (quoting K.A.R. 49-20-1-(d)).

[39]While defendants cite cases from Idaho and Delaware in which similar wage payment statutes are analyzed, these cases only provide persuasive authority because they do not involve interpretation of the KWPA.

summary determination and be proven with complete certainty."[40]  Because the Court concludes

that the issue in this case involves a legal ambiguity, the Court is unable to summarily determine

that there is no possibility that plaintiff would be able to establish a cause of action against Black

in state court.  Addressing this unresolved issue would require the Court to delve into a "merits

determination that, absent fraudulent joinder, should be left to the state court where the action

was commenced."[41]

When other courts in the District of Kansas have encountered an ambiguous or

undeveloped issue of law, those courts have found it appropriate to remand the action to the state

court for an interpretation of an uncertain area of Kansas law.[42]  For example, this case is quite

similar to *Cooper v. Zimmer Holdings, Inc.,*[43] in which plaintiffs and defendants disputed the

proper interpretation of a statutory term under Kansas law.  In that case, plaintiffs brought a

claim against defendants under the Kansas Product Liability Act ("KPLA").[44]  Defendants

removed the action alleging that the non-diverse defendant had been fraudulently joined because

plaintiffs had no possibility of recovering against the non-diverse defendant because it was not a

---

[40]*Dodd v. Fawcett Publ'ns, Inc.*, 329 F.3d 82, 85 (10th Cir. 1964).

[41]*Montano v. Allstate Indemnity*, 211 F.3d 1278 (table), 2000 WL 525592, at *1–2 (10th Cir. Apr. 14, 2000) (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851–53 (3d Cir. 1992) ("A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.")).

[42]*See e.g.*, *Van Hoecke Contracting, Inc. v. Lennox Indus., Inc.*, No. 05-2343-JWL, 2005 WL 2575271, at *5 (D. Kan. Oct. 12, 2005) (citing *Schnepf v. Kan. Gas Serv. Co.*, No. 04-4143-JAR, 2005 WL 628023, at *4 (D. Kan. Mar. 4, 2005)).

[43]320 F. Supp. 2d 1154 (D. Kan. 2004).

[44]*Id.* at 1156.  Plaintiffs also brought a claim under the Kansas Consumer Protection Act ("KCPA").  The court also found in *Cooper* that there was a possibility that the plaintiffs could establish a claim against the non-diverse defendant in state court under the KCPA.  *Id.* at 1164.

"product seller" subject to liability under the KPLA.[45]  Like the parties in this case, the parties in

*Cooper* presented conflicting interpretations of the statutory term and persuasive authority to

support those differing interpretations, thereby demonstrating an ambiguity in the controlling

law.[46]  In determining that remand of the action was warranted, Judge Lungstrum "emphasiz[ed]

that [the court] is not intending to advocate one party's interpretation of the term 'product seller'

over the others.  In fact, the defendants could ultimately prevail on their statutory interpretation.

What the defendants have not demonstrated, however, is that there is no possibility that plaintiffs

could state a claim against [the non-diverse defendant] in state court."[47]

Likewise, the Court in this case makes no determination on the merits as to whether the

damages plaintiff seeks under paragraph 10 of the Employment Agreement constitute "wages"

under the KWPA.  But viewing all facts and ambiguities in the controlling law in favor of

plaintiff as the non-removing party, the Court is unable to conclude that there is no possibility

that plaintiff could recover against Black under the KWPA.  Thus, the Court finds that

defendants have not met the heavy burden of showing that there is no possibility that plaintiff

may establish a claim against Black under the KWPA.  Accordingly, the Court remands this

action to the District Court of Johnson County, Kansas.

## IV.    Request for Fees

Plaintiff asks the Court for an award of attorneys' fees and costs incurred as a result of

the improper removal of this case.  Under 28 U.S.C. § 1447(c), "[a]n order remanding the case

may require payment of just costs and any actual expenses, including attorney fees, incurred as a

---

[45]*Id.* at 1157.

[46]*Id.* at 1158–1162.

[47]*Id.* at 1162.

result of the removal."  In *Martin v. Franklin Capital Corp*,[48] the Supreme Court explained the

appropriate standard for awarding such fees under the statute:

> Absent unusual circumstances, courts may award attorney's fees
> under § 1447(c) only where the removing party lacked an
> objectively reasonable basis for seeking removal.  Conversely,
> when an objectively reasonable basis exists, fees should be denied.
> In applying this rule, district courts retain discretion to consider
> whether unusual circumstances warrant a departure from the rule
> in a given case.  For instance, a plaintiff's delay in seeking remand
> or failure to disclose facts necessary to determine jurisdiction may
> affect the decision to award attorney's fees.  When a court
> exercises its discretion in this manner, however, its reasons for
> departing from the general rule should be "faithful to the purposes"
> of awarding fees under § 1447(c).[49]

Based on the arguments presented by both parties regarding the statutory interpretation of the

term, "wages," under the KWPA, the Court is unable to conclude that defendants lacked an

objectively reasonable basis for seeking removal.  Thus, the Court does not find that fees and

costs are warranted in this case.

## V.      Defendants' Motion to Dismiss

Defendants have also filed a Motion to Dismiss (Doc. 5) the KWPA claim against Black.

Because the Court has determined that there is diversity jurisdiction in this case and that remand

is appropriate, this Court does not have jurisdiction to entertain defendants' motion to dismiss.

Accordingly, the Court denies defendants' motion to dismiss as moot.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion to

Remand (Doc. 13) is **GRANTED**.

**IT IS FURTHER ORDERED THAT** defendants' Motion to Dismiss (Doc. 5) is

---

[48]126 S. Ct. 704 (2005).

[49]*Id.* at 711 (citations omitted).

**DENIED as moot.**

   **IT IS SO ORDERED.**

   Dated this 6<u>th</u> day of August 2007.

                                                      S/ Julie A. Robinson
-
                                                     Julie A. Robinson
                                                     United States District Judge


Memorandum and Order Granting Plaintiff's Motion to Remand, *Scott v. Black*, Case No. 07-2177

13